# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Lori Lisk,                              :        CIVIL NO: **3:13-CV-887**
                                        :
      Plaintiff                 :
                                        :        (Judge Nealon)
          v.                :
                                        :        (Magistrate Judge Blewitt)
Carolyn Colvin,                         :
Acting Commissioner of                  :
the Social Security Administration      :
                                        :
      Defendant.                :


## REPORT AND RECOMMENDATION


## I.       PROCEDURAL HISTORY.

Plaintiff Lori Lisk, filed, through counsel, a Complaint on April 8, 2013, appealing the

final decision denying her application for Social Security Disability Benefits, pursuant to 42

U.S.C. §405(g).  (Doc. 1).  Plaintiff filed a motion to proceed *in forma pauperis* (Doc. 2), which

was granted by the court on April 10, 2013.  (Doc. 3).

This Court has jurisdiction over Plaintiff's appeal pursuant to 42 U.S.C. §405(g).  *See*

*Smith v. Astrue*, No. 10-CV- 1178, 2011 WL 1790055, *2 (W.D. Pa. May 10, 2011).

On June 4, 2013, Defendant filed an Answer to Plaintiff's Complaint.  (Doc. 8).

Defendant also filed the administrative record.  (Doc. 9).  On August 9, 2013, Plaintiff filed a

Brief in Support of her Complaint.  (Doc. 12).  On September 12, 2013, Defendant filed her

Brief.  (Doc. 21).  Plaintiff did not file a reply.

On June 7, 2010, Plaintiff protectively filed an application for a period of disability

insurance benefits (DIB), pursuant to Title II of the Social Security Act (the Act), 42 U.S.C. §§401-434 alleging a disability onset date of February 26, 2010. This application was initially denied by the Agency on August 11, 2010. Thereafter, Plaintiff filed a written request for a hearing on September 9, 2010. On September 14, 2011, a hearing was held before Administrative Law Judge Peter V. Train, in Harrisburg, Pennsylvania. In his written decision denying Plaintiff's application for DIB, ALJ Train noted that Plaintiff submitted post-hearing evidence of a medical examination of Plaintiff, and medical source statement of a clinical neuropsychologist, Dr. Christopher Royer. Plaintiff also submitted a request for a supplemental hearing to take additional vocational expert testimony. The ALJ concluded that no further proceedings were necessary for a full and fair evaluation of the Plaintiff's case.

On February 2, 2012, Plaintiff filed a request for review of the ALJ's decision. (Tr. 7). On February 12, 2013, the Appeals Counsel denied Plaintiff's request for further review. (Tr. 1).

## II.     STANDARD OF REVIEW.

When reviewing the denial of disability benefits, the reviewing court must determine whether the denial is supported by substantial evidence. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988); *Johnson v. Commissioner of Social Sec.*, 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360. (3d Cir. 1999); *Johnson*, 529 F.3d at 200. It is less than a preponderance of the evidence

but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

To receive disability benefits, the Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Furthermore:

[a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §423(d)(2)(A).

## III.    DISABILITY EVALUATION PROCESS.

A five-step evaluation process is used to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520; *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further. *See* 20 C.F.R. § 404.1520(a)(4).

The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's

impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. § 404.1520(a)(4).

Here, in his December 1, 2011, decision, ALJ Train proceeded through each step of the sequential evaluation process and concluded that the Plaintiff was not disabled within the meaning of the Act during the relevant time period. (Tr. 11-26).

At step one, the ALJ concluded Plaintiff did not engage in substantial gainful work activity since February 26, 2010, the alleged onset date. (Tr. 13).

At step two, the ALJ concluded that through the last date insured, Plaintiff's impairment due to the late effects of embolic cerebrovascular accident (CVA), including chronic right upper extremity weakness and cognitive disorder, were severe. (*Id*.). However, the ALJ concluded that the additional medical impairments of asthma, irritable bowel syndrome (IBS), shin splints, chronic migraine headaches, hyperlipidemia, and morbid obesity, were medically determinable but not severe. (*Id*.).

At step three, the ALJ found that the Plaintiff's severe impairments did not meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526; (Tr. 15).

The ALJ also determined that the Plaintiff had the residual functional capacity ("RFC") to perform limited sedentary work.[1] (Tr. 19). Specifically, the ALJ found that the Plaintiff could

---

[1]Sedentary work involves lifting no more than 10 pounds occasionally with frequent lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §404.1567(a).

perform sedentary work with the following exertional, and non-exertional, restrictions: "lift and carry up to ten pounds on a regular basis; sit up to eight hours in an eight-hour workday; stand up to six hours in an eight-hour workday; no work requiring rapid or constant use of the right dominant hand; no work requiring independent judgment, such that routine work would be required; and no work requiring significant concentration, defined, for example by a cashier position where the cashier would not have to independently calculate the correct amount of change to give." (Tr. 19).

At step four, the ALJ found that the Plaintiff was not capable of performing any of her past relevant work as a nurse's assistant. (Tr. 24).

At step five, the ALJ found that considering the Plaintiff's age (37 at onset date), education (high school), work experience, and residual functional capacity, there were significant numbers of jobs in the national economy which the Plaintiff could perform. *See* 20 C.F.R. §§404.1569 and 404.1569(a); (Tr. 24). The ALJ therefore concluded that the Plaintiff was not under a disability, as defined in the Act, at any time from February 26, 2010, the alleged onset date, through December 1, 2011, the date of the ALJ's decision. *See* 20 C.F.R. § 404.1520(g); (Tr. 25).

An impartial vocational expert, Brian Bierley, testified at the Plaintiff's hearing before the ALJ. The ALJ posed a hypothetical question to the vocational expert ("VE"), inquiring whether significant jobs existed in the national economy for an individual of Plaintiff's age, education, work experience and residual functional capacity could perform. (Tr. 25). The vocational expert testified that a person with these limitations could perform the requirements of

5

representative occupations, such as a semiconductor bonder, carding-machine operator, and stuffer. (*Id*.).

## IV.    BACKGROUND.

The Plaintiff was born on October 28, 1972, and was thirty-nine (39) years old on the date of the ALJ's decision, which classifies her as a younger individual pursuant to the Act.  *See* 20 C.F.R. §404.1563.  (Tr. 36-37).  Plaintiff has a high school education and is able to communicate in English.  (Tr. 37).  Plaintiff alleges that she has been disabled since February 26, 2010, due to a "mini stroke."  (Tr. 155).

### A. Medical Evidence.

Plaintiff was admitted to the Carlisle Regional Medical Center on February 26, 2010, after experiencing an episode of right-sided weakness and slurred speech while she was at work.  (Tr. 275).  An MRI of Plaintiff's brain performed on March 1, 2010, showed evidence of embolic cerebrovascular accident (CVA).  (Tr. 268).  On Match 3, 2010, the date Plaintiff was discharged from the hospital, most of her symptoms had resolved; though Plaintiff indicated that she still felt weakness on her right side, and was experiencing coordination problems with her right fingers.  (Tr. 277-78).

In March 2010, Plaintiff's family physician, James S. Thompson, M.D., reported that Plaintiff had suffered a very mild stoke that left her with right arm weakness.  (Tr. 431).  Dr. Thompson referred Plaintiff for physical and occupational therapy at Carlisle Regional Medical Center.  (Tr. 257).  Plaintiff's medical records from the occupational therapist indicate that in March 2010, she had occasional paresthesias in her right upper extremity ranging from her

finger tips to her shoulder, and that she was not experiencing any facial paresthesias. (Tr. 261).

On March 4, 2010, Dr. Thompson referred Plaintiff to a neurologist, Dr. Salim Qazizadeh, M.D. (Tr. 434). On March 23, 2010, Dr. Quazizadeh ordered a sleep study to rule out a diagnosis of obstructive sleep apnea after Plaintiff complained of snoring. (Tr. 302-305). On April 26, 2011, Plaintiff underwent a polysomnography, which did not reveal any significant sleep-related breathing disorder. (Tr. 320).

On May 4, 2010, Plaintiff presented at the Carlisle Regional Medical Center Emergency Room for treatment of a contusion of her right hand after it was slammed into the wall. (Tr. 233). On June 2, 2010, Plaintiff returned to the Carlisle Regional Medical Center Emergency Room after experiencing numbness in her right arm radiating from her shoulder to her wrist. (Tr. 223).

On June 7, 2010, during an appointment with Dr. Qazizadeh, Plaintiff indicated that she was experiencing intermittent right upper extremity weakness. (Tr. 298). During his examination, Dr. Qazizadeh observed that Plaintiff had mild muscle weakness involving her right upper extremity. (Tr. 299). Dr. Qazizadeh recommended that Plaintiff continue with occupational therapy, and ordered a new brain MRI and MRA. (*Id.*). On June 22, 2010, during a follow-up appointment, Dr.Qazizadeh told Plaintiff that her recent MRI and MRA were unremarkable. (Tr. 294). At this appointment Plaintiff complained that she had been experiencing intermittent worsening of her right upper extremity weakness, with episodes occurring roughly twice per week. (*Id.*).

On June 28, 2010, Dr. Thompson performed a physical examination on Plaintiff for the

disability office. (Tr. 422-426). After the examination, Dr. Thompson reported that Plaintiff had subtle right upper limb weakness, and that Plaintiff's right arm is just slightly weaker than her left but is not markedly different. (Tr. 425). Dr. Thompson recommended that Plaintiff should not climb, but determined that no further restrictions were necessary. (*Id.*). On the same date, Dr. Thompson completed a welfare form on Plaintiff's behalf. (Tr. 350- 54). On the form Dr. Thompson indicated that Plaintiff's condition did not preclude her from full-time employment with reasonable accommodation. (Tr. 351).

On July 13, 2010, during an office visit with Dr. Thompson, Plaintiff complained that while in Charlestown, West Virginia with family, she experienced a fifteen minute period of muscle weakness in her right leg. (Tr. 414-17). Dr. Thompson diagnosed right leg pain, stating that he "cannot appreciate new changes nor residual from the previous CVA. (Tr. 416-17).

On July 23, 2010, Plaintiff was examined by Dr. Nicole E. Purcell, D.O.[2] (Tr. 459-63). During her appointment, Plaintiff complained of episodes of weakness in her upper and lower right extremities. (Tr. 459). Upon her examination, Dr. Purcell observed that Plaintiff had a minimal decreased hand grip in her right upper extremity, had decreased finger tapping, and had difficulty tapping each finger independently. (Tr. 461). Dr. Purcell concluded that Plaintiff's symptoms were, for the most part, mild. (*Id.*).

On August 10, 2010, Plaintiff was examined by Dr. Qazizadeh. (Tr. 457-58). Dr. Qazizadeh remarked that Plaintiff seemed to be back to her baseline, but still had intermittent

---

[2]Dr. Purcell is an associate of Dr. Qazizadeh who examined Plaintiff because Dr. Qazizadeh was away from the office. (Tr. 459).

paresthesias and weakness on her right side. (Tr. 457). Based on Plaintiff's continuing difficulties, Dr. Qazizadeh ordered blood work and a spinal tap to rule out any other conditions that may effect her central nervous system (CNS). (Tr. 458). On August 31, 2010, Plaintiff had a follow-up exam with Dr. Qazizadeh. (Tr. 454-56). The results of Plaintiff's blood work and spinal tap were largely unremarkable, but did reveal an electrophoretic pattern suggestive of monoclonal gammopathy. (Tr. 455).

On September 9, 2011, Plaintiff was evaluated by Dr. Christopher Royer, a clinical neuropsychologist. (Tr. 543-49). Dr. Royer determined that Plaintiff suffered from cognitive disorder, NOS secondary to CVA. (Tr. 545). Dr. Royer concluded that Plaintiff "is having significant problems in the area of communications. She may have difficulty with even the simplest directive communications, although she does better when the situation is not guarded by any specific rules. (Tr. 545). Dr. Royer also completed a medical source statement on Plaintiff's behalf. (Tr. 547-49). In his statement, Dr. Royer opined that Plaintiff had moderate, marked, or extreme limitations in all mental work-related areas of function. (*Id.*). Dr. Royer based his opinion upon his observations that Plaintiff had impaired communication skills, poor comprehension, and was physically unsteady. (*Id.*).

### B. Plaintiff's Testimony.

During her hearing before ALJ Train, Plaintiff testified that she was working part-time as a cashier at a Wendy's fast food restaurant. (Tr. 39). Plaintiff is required to stand while she is working. (Tr. 51-52). Plaintiff stated that she generally works no more than 22 hours per week, but did work a 32-hour week on one occasion. (Tr. 39). Plaintiff testified that she generally

works four to six hours per day, the longest she has worked in on day at Wendy's is seven-and-one-half hours. (Tr. 41). Plaintiff also testified that, after her alleged onset date and continuing through the date of the ALJ hearing, she applied for and received unemployment compensation benefits. (Tr. 41-42, 133-35).

Plaintiff testified that she can perform household chores such as mopping the kitchen floor, cleaning the bathroom, cleaning laundry, and grocery shopping; Plaintiff testified that she often needs to take a nap after performing these activities. (Tr. 48). Plaintiff testified that she has no problem driving. (Tr. 49). Plaintiff is able to follow the plot while watching a movie. (Tr. 49). In a function report completed by the Plaintiff on July 12, 2010, Plaintiff indicated that she could pay attention for a long time, and is capable of handling stress and changes in routine. (Tr. 171-72).

### C. Statements by Plaintiff's Witness, Terry Coant.

Terry Coant is a friend of the Plaintiff, he sees her every day and has lived with her for a few years. (Tr. 55-56). Mr. Coant testified that prior to her first stroke, Plaintiff was hard working, and had no memory problems. (Tr. 56). After her stroke he noticed that she began to have memory problems. (*Id.*). Mr. Coant testified that Plaintiff goes through periods of forgetfulness, where she can't remember what she does, three to four times per week. (Tr. 58).

Mr. Coant testified that the first time he saw Plaintiff after her stroke was the day she was released from the hospital. (Tr. 57). At that time, Plaintiff's right hand was frozen in a claw-like position, and her mouth drooped down and impeded her ability to speak. (*Id.*). During this time Plaintiff had difficulty opening bottles, but noted that this condition eventually cleared up.

10

(Tr. 57-58). Mr. Coant testified that he has observed a few similar but less severe episodes, where Plaintiff's mouth drooped after February 2010. (Tr. 58).

Mr. Coant testified that Plaintiff becomes fatigued very quickly, and takes frequent naps. (Tr. 59). He stated that Plaintiff takes naps after cleaning the bathroom, and is "tired as heck" after she gets home from a shift at Wendy's. (*Id.*). Mr. Coant observed that after Plaintiff arrives home from work, she takes her medication and goes directly to bed. (*Id.*).

### D. Vocational Expert's Testimony.

An impartial vocational expert (VE) testified at the ALJ hearing. (Tr. 61). The VE testified that Plaintiff's past work as a nurse's assistant was medium, semi-skilled work, and that her current position as a Wendy's cashier is light, unskilled work. (Tr. 61). During Plaintiff's hearing, the ALJ asked the VE whether an individual of Plaintiff's age, education, and experience who is capable of lifting up to 10 pounds on a regular basis, sitting eight hours a day, standing 6 hours a day, who could not perform a job that would require rapid or constant use of her right dominant hand or would require independent judgment, could do other work activities. (Tr. 61-62). The VE testified that and individual with those limitations could perform sedentary work as a semi-conductor bonder, carding machine operator, and stuffer machine tender. (Tr. 62).

## V.     DISCUSSION.

As stated, the ALJ denied both Plaintiff's claim for DIB. Plaintiff appeals to this federal Court the final decision of Defendant denying her claims for the stated benefits. "[T]his Court may not undertake a de novo review of the Commissioner's decision or re-weigh the evidence

of record." *Weimer v. Astrue*, No. 2:08-CV-412, 2009 WL 563932, *3 (W.D.Pa. Mar. 5, 2009)(citations omitted). Rather, [t]he Court must simply review the findings and conclusions of the ALJ to determine whether they are supported by substantial evidence." *Id*. (citations omitted).

In *Smith v. Astrue*, the Court stated:

In determining whether a claimant is eligible for supplemental security income, the burden is on the claimant to show that she has a medically determinable physical or mental impairment (or combination of such impairments) which is so severe she is unable to pursue substantial gainful employment[FN4] currently existing in the national economy.[FN5] The impairment must be one which is expected to result in death or to have lasted or be expected to last not less than twelve months. 42 U.S.C. § 1382c(a)(3)(C)(l); *Morales v. Apfel,* 225 F.3d 310, 315–316 (3d Cir.2000). To be granted a period of disability and receive disability insurance benefits, a claimant must also show that she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a). The Commissioner does not dispute that Ms. Smith satisfied the first two non-medical requirements and the parties do not object to the ALJ's finding that Plaintiff's date last insured was December 31, 2006. (Tr. 23.)
FN4. According to 20 C.F.R. § 416.972, substantial employment is defined as "work activity that involves doing significant physical or mental activities." "Gainful work activity" is the kind of work activity usually done for pay or profit.

FN5. A claimant seeking supplemental security income benefits must also show that her income and financial resources are below a certain level. 42 U.S.C. § 1382(a).

2011 WL 1790055 at *2.

The Plaintiff argues that substantial evidence does not support the ALJ's finding that she is not disabled. Specifically, the Plaintiff argues that the ALJ erred in not giving Dr. Royer's

medical opinion proper weight. Plaintiff states that the ALJ posed improper hypotheticals to the VE. Plaintiff claims that, in finding her testimony only partially credible, the ALJ improperly considered evidence that Plaintiff was collecting partial unemployment compensation benefits. Finally, Plaintiff contends that the ALJ improperly evaluated Plaintiff's subjective testimony, and the testimony of her witness, regarding her functional limitations due to memory loss and chronic fatigue.

For the reasons set forth below, I find that this ALJ ruling is supported by substantial evidence, which was fully-addressed in the record of these proceedings. Accordingly, I recommend that the ALJ's decision be affirmed.

**A. The ALJ Properly Evaluated The Opinion of Doctor Royer.**

On September 9, 2011, Dr. Royer performed a neuropyschological evaluation of the Plaintiff, and then submitted a detailed medical source statement regarding Plaintiff's mental limitations with respect to performing work-related activities. (Tr. 543-549). Ultimately, the ALJ afforded little weight to Dr. Royer's medical opinion because the report was "an unsupported, inconsistent, and subjectively based snapshot overestimate of the severity of the claimant's limitations." (Tr. 23). Plaintiff argues that the ALJ erred in assigning Dr. Royer's medical opinion limited weight. (Doc. 12 p. 9). In response Defendant argues that the ALJ was not required to afford Dr. Royer's opinion significant weight. (Doc. 13 p. 11).

It is beyond dispute that, in a social security disability case, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). This principle applies with particular force to the

13

testimony of a treating physician, testimony that is to be accorded great weight by the ALJ. In this regard, the legal standards governing our evaluation of this type of evidence are familiar ones. In *Morales v. Apfel*, the Court of Appeals for the Third Circuit set forth the standard for evaluating the opinion of a physician stating that:

> A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Plummer [v. Apfel*, 186 F.3d 422, 429 (3d Cir.1999)] (quoting *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)); *see also Adorno v. Shalala*, 40 F.3d 43, 47 (3d Cir.1994); *Jones*, 954 F.2d at 128; *Allen v. Bowen*, 881 F.2d 37, 40-41 (3d Cir.1989); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988); *Brewster*, 786 F.2d at 585. Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Plummer*, 186 F.3d at 429 (*citing Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir.1993)). The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled. *See Adorno*, 40 F.3d at 48. In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion. *Plummer*, 186 F.3d at 429; *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988); *Kent*, 710 F.2d at 115.

225 F.3d at 317-318.

Similarly, the Social Security Regulations state that when the opinion of a treating physician is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record," it is to be given controlling weight. 20 C.F.R. §404.1527(C)(2). When the opinion of a treating physician is not afforded controlling weight, the regulations provide several factors to consider in determining the weight of a non-controlling opinion by a treating physician, including, but not

limited to, the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, and its consistency with the medical record as a whole and with any relevant evidence submitted by the medical source offering the opinion, to determine the weight to give the medical opinion. 20 C.F.R. §404.1527. Further, "the regulations make clear that a treating physician's statement that a claimant is 'disabled' or 'unable to work' is not necessarily afforded substantial deference, as such opinions are 'reserved to the Commissioner because they are administrative findings that are dispositive of a case.' 20 C.F.R. §404.1527(e). However, the regulations provide - and courts require - that the ALJ 'give good reasons' for the amount of weight given to a treating physician's opinion.' 20 C.F.R. §404.1527(d)(2); *Fargnoli v. Massanari*, 247 F.3d 34, 42-44 (3d Cir. 2001)." *Driggs v. Astrue*, 1:06-CV-2180, 2008 WL 818888 *3 (M.D.Pa. Mar. 25, 2008).

In this case, the ALJ quite appropriately gave greater weight to the opinions voiced by Plaintiff's family physician and treating neurologists who have consistently characterized Plaintiff's right side muscle weakness as "mild" or "subtle" (Tr. 299, 425, 461), and opined that her condition does not preclude her from full-time employment with reasonable accommodation. (Tr. 351). Plaintiff never voiced any complaints to her family physician, or treating neurologist, that she experienced any cognitive or communicative difficulties, and indicated on July 12, 2010, in her own functional report, that she could pay attention for a long time, and is capable of handling stress and changes in routine. In my view, there is substantial evidence in support of the ALJ's conclusion that this body of medical evidence, which was fully supported by detailed clinical testing data, outweighed the eleventh-hour opinion expressed by Dr. Royer after one

examination, on a checklist form.

**B. The ALJ Properly Posed A Properly Formulated Hypothetical to The VE.**

One of the principal contested issues in this setting relates to the claimant's residual capacity for work in the national economy, an ALJ must exercise care when formulating proper hypothetical questions to vocational experts who opine on the availability of work for a particular claimant. In this regard, the controlling legal standards are clear, and clearly defined. As the United States Court of Appeals for the Third Circuit has observed:

> Discussing hypothetical questions posed to vocational experts, we have said that "[w]hile the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." *Podedworny*, 745 F.2d at 218. A hypothetical question posed to a vocational expert "must reflect *all* of a claimant's impairments." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir.1987) (*emphasis added*). Where there exists in the record medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence. *Podedworny*, 745 F.2d at 218 (*citing Wallace v. Secretary of Health & Human Servs.*, 722 F.2d 1150, 1155 (3d Cir.1983)).

*Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002).

The formulation of a proper hypothetical question has a dual significance in social security proceedings. First, as an evidentiary matter, it determines whether the vocational expert's opinion can be considered as substantial evidence supporting an ALJ finding. *Burns*, 312 F.3d at 123("Where there exists in the record medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence."). Second, and more fundamentally, an erroneous or

16

inadequate hypothetical question undermines the reliability of any residual function capacity

determination since "objections to the adequacy of hypothetical questions posed to a vocational

expert often boil down to attacks on the RFC assessment itself." *Rutherford v. Barnhart*, 399 F.3d

546, 554 n. 8 (3d Cir. 2005).

During Plaintiff's hearing, the ALJ posed the following hypothetical question to the VE:

Let's assume you have an individual who is capable of lifting up to 10 pounds on
a regular basis. She is capable of sitting or – sitting eight hours a day, capable of
standing at least 6 hours a day. She would be limited in – to jobs that would not
require rapid or constant use of her right dominant hand. Would not require –
the job would not require independent judgment in the sense that it's going to be
a routine job, because she's not going to have to remember how to do change.
If that's indicative of her concentration levels, would you – if these limitations
were true and supported by objective medical evidence... Would you expect a
hypothetical individual the same age, education, past work activity to – as the
Claimant to do other work activities?

(Tr. 61-62).

Here, Plaintiff asserts that the hypothetical posed to the VE by the ALJ failed to reflect all

impairments supported by the record. Specifically, Plaintiff argues that the ALJ's hypothetical

failed to include Plaintiff's: difficulty with impaired memory recall, (Tr. 544); impaired bilateral

motor speed, (Tr. 545); impaired language and communication skills (Tr. 547); difficulty making

judgments on simple work related decisions, responding appropriately to the public or to normal

work situations, (Tr. 547). (Doc. 12 p. 17). Plaintiff correctly asserts that, to be considered

substantial evidence, a hypothetical question must reflect all impairments supported by the

record. An ALJ, however, is not required to submit to the vocational expert every impairment

*alleged* by the claimant," rather, "the ALJ must accurately convey to the vocational expert all of

the *credibly established limitations*." *Rutherford,* 399 F.3d at 554 (holding a hypothetical submitted to a VE excluding limitations reasonably discounted by the ALJ is substantial evidence). It is important to note, however, that the limitations which were not included in the hypothetical posed to the VE because the medical evidence that first identified these impairments was submitted as post-hearing evidence. Further, the ALJ determined that no supplemental proceedings were required to address Dr. Royer's medical opinion because it was "entirely without support from other medical evidence of record," (Doc. 23), a conclusion which I find was supported by substantial evidence. *See Section V(A) of this Report*.

Accordingly, I find that the hypothetical posed by the ALJ to the VE is substantial evidence, as it includes all of Plaintiff's credibly established limitations.

### C. Plaintiff's Argument That The ALJ Improperly Considered Her Receipt of Unemployment Compensation Benefits Lacks Merit.

Plaintiff contends that the ALJ used her receipt of unemployment compensation as a reason to find that she was not disabled. Plaintiff argues this was an error because she could work part-time and still collect unemployment benefits. At the ALJ hearing, Plaintiff testified that when she applied for unemployment she was required to affirm that she was ready, willing, and able to work. (Tr. 42). The ALJ pointed out that today she is asserting that as of February 26, 2010, she was no longer able to work. (*Id.*). When asked how she reconciled these two seemingly conflicting positions, the Plaintiff responded "I don't know." (*Id.*).

An individual can only collect unemployment if the individual is able and willing to accept work. 43 P.S. §801(d)(1). The Pennsylvania Department of Labor and Industry's website

indicates the following:

> UC is for people who lost a job because of something that wasn't their fault. If you're out of work because your employer had to make cutbacks, close an office, went out of business or something you couldn't control, it's possible that you will be eligible to collect U.C....Finally, you must be able and ready to return to work (either to your old job or a new one) to claim UC.

Am I eligible for UC?, Pennsylvania Department of Labor and Industry, http://www.uc.pa.gov/portal/server.pt/community/eligibility/20593 (last visited Dec. 9, 2013). Those who are approved to collect unemployment compensation are required to file a biweekly claim for benefits. Pennsylvania Unemployment Compensation Handbook, Pennsylvania Department of Labor & Industry, Office of Unemployment Compensation Benefits, http://www.portal.state.pa.us/portal/server.pt?open=514&objID=552117&mode=2 (last accessed Dec. 9, 2013).

I find that Plaintiff's argument lacks merit. It is entirely proper for the ALJ to consider a claimant's receipt of unemployment compensation benefits as inconsistent with a claim of disability during the same period. *Meyers v. Barnhart*, 57 Fed. Appx. 990, 991 (3d Cir. 2003)(*citing Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997)). Moreover, it is clear that Plaintiff's receipt of unemployment compensation benefits was not the only reason for the ALJ's credibility assessment. Accordingly, I find that the ALJ did not err in considering Plaintiff's receipt of unemployment compensation benefits in assessing her overall credibility.

### D. The ALJ Properly Evaluated the Credibility of the Plaintiff, and Her Witness Terry Coant.

"'[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's

demeanor and credibility.' *Walters v. Commissioner of Social Sec.*, 127 F.3d 525, 531 (6th Cir. 1997); *see also Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991) ('We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.')." *Frazier v. Apfel*, No. 99-CV-715, 2000 WL 288246 (E.D. Pa. Mar. 7, 2000). "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Com. of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999). An ALJ may find testimony to be not credible, but he must give great weight to a claimant's subjective testimony. *Id*.

In making this assessment, the ALJ is guided both by statute and by regulations. This guidance eschews wholly subjective assessments of a claimant's pain. Instead, at the outset, by statute the ALJ is admonished that an "individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all the evidence. . . , would lead to a conclusion that the individual is under a disability." 42 U.S.C. § 423(d)(5)(A).

Applying this statutory guidance, the Social Security Regulations provide a framework under which a claimant's subjective complaints are to be considered. 20 C.F.R. § 404.1529. Under these regulations, first, symptoms, such as pain, shortness of breath, and fatigue, will only be considered to affect a claimant's ability to perform work activities if such symptoms result

from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. § 404.1529(b). Once a medically determinable impairment which results in such symptoms is found to exist, the Commissioner must evaluate the intensity and persistence of such symptoms to determine their impact on the claimant's ability to work. 20 C.F.R. § 404.1529(b). In so doing, the medical evidence of record is considered along with the claimant's statements. 20 C.F.R. § 404.1529(b). Social Security Ruling 96-7p gives the following instructions in evaluating the credibility of the claimant's statements regarding her symptoms: "In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements. In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true. When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p. SSR 96-4p provides that "[o]nce the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the pain or other symptoms alleged has been established on the basis of medical signs and laboratory findings, allegations about the intensity and persistence of the symptoms must be considered with the objective medical abnormalities, and all other evidence in the case record, in evaluating the functionally limiting effects of the impairment(s)." SSR 96-4p.

Here, the ALJ, pointed to extensive medical evidence from Plaintiff's treating physician

21

and neurologist which did not substantiate the extent of Plaintiff's subjective complaints with respect to her allegations of functional limitation due to chronic fatigue and memory impairment. (Tr. 20-21). Specifically, the ALJ noted that: it was consistently noted in the treatment records of Plaintiff's primary care physician and neurologist that Plaintiff was alert, fully oriented, pleasant, cooperative, and psychologically stable upon examination, (Tr. 20-21, 295, 299, 304, 517); Plaintiff's first complaint of memory impairment was not until September 2011, (Tr. 21, 295, 299, 304, 424, 544); Doctor Royer's mental status examination in September 2011 does not suggest more than a mild to moderate functional limitation with respect to any memory impairment, (Tr. 21, 543-49); Plaintiff never complained of chronic fatigue to her primary care physician, or neurologist,, and in some cases specifically denied that she experienced any symptoms of fatigue. (Tr. 21, 382 390, 415, 423, 428, 432, 514, 520, 524, 528, 532).

Plaintiff also contends that the ALJ failed to properly evaluate the credibility of her witness, Mr. Coant, who attested to his subjective observation of Plaintiff's symptoms of chronic fatigue and memory impairment. The ALJ concluded that Mr. Coant's testimony was not entirely credible because, like Plaintiff's, the degree of limitation described was in large part unsupported by the record as a whole. (Tr. 22).

Accordingly, because the ALJ considered the entire record and gave specific reasons for his decision to assign limited weight to the statements of Plaintiff and her witness, I find that substantial evidence supports the ALJ's evaluation of the credibility of both the Plaintiff and her witness.

## IV. RECOMMENDATION.

Based on the foregoing, **IT IS RECOMMENDED THAT** Plaintiff's appeal from the decision

of the Commissioner of Social Security, (Doc. 1), for disability insurance benefits be **DENIED**.


                                        s/ Thomas M. Blewitt
                                        **THOMAS M. BLEWITT**
                                        **United States Magistrate Judge**


**Dated: December 19, 2013**

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Lori Lisk,                                    :          CIVIL NO: **3:13-CV-887**
                                              :
      Plaintiff                     :
                                              :          (Judge Nealon)
           v.            :
                                              :          (Magistrate Judge Blewitt)
Carolyn Colvin,                               :
Acting Commissioner of                        :
the Social Security Administration            :
                                              :
      Defendant.                    :

### <u>NOTICE</u>

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **December 19, 2013.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

_____

_____Failure to file timely Objections to the foregoing Report and Recommendation may

constitute a waiver of any appellate rights.


                                                    **s/ Thomas M. Blewitt**
_____        **THOMAS M. BLEWITT**
                                                    **United States Magistrate Judge**


**Dated: December 19, 2013**